Johnson, J.
The guaranty sued on was as follows:
“Cincinnati, January 3d, 1905.
“For value received we hereby jointly and severally guarantee to the Third National Bank of Cincinnati, Ohio,, in respect of any loans heretofore or hereafter made by it to the American Mahogany Company, or the International Mahogany Company, for which warehouse receipts calling for Cuban mahogany lumber, or logs, are taken as collateral security, that the net proceeds, after deducting all expenses, of the sale of said lumber or logs, should said company default in its payments and the bank sell its collateral, shall-not be less than the amount of money loaned by the bank plus any accrued interest and—
*97 “We agree to make good to said bank any loss it may suffer should the net proceeds of the lumber or logs be less than the claim of the bank.
“This guarantee applies to a loan represented by note dated January 5th, 1905, amounting to $26,345.86,' and the renewal of same or any part thereof.
“L. M. Moraques, “Robert Laidlaw.”
The note referred to, and which is conceded to have been made when the guaranty was delivered, is on the ordinary form used by banks which include provisions for collateral security. It is for $26,345.86, dated January 4, 1905, payable to the bank and due four months after date with 8 per cent, interest, payable semi-annually, and with the following collateral security clause: “having pledged as collateral security for the payment of this note, and of every other liability of the undersigned to said Bank, whether as maker, endorser, surety, or otherwise, due or to become due, or which may hereafter be incurred, the following property, viz: Export Storage Co. Receipts Nos. 529, 378, 420, 541, 401, 472, 593, calling for 377,520 feet of Cuban mahogany lumber, log run. The market value of which is now $...........” On default by the Mahogany Company the bank sold the lumber, and it is conceded that it did not have, and did not sell, 377,520 feet, but a quantity much less, which when sold, realized a sum which was $17,616.29 less than the amount due on the note.
*98 The question presented is, as to the construction of the conditional guaranty and, whether evidence is competent to show the circumstances surrounding the transaction, to aid in the construction and in arriving at the intention of the parties in the giving and accepting of it. Defendant contends that the guaranty related only to the value of 377,520 feet of Cuban mahogany lumber, log run, and was conditioned on the sale by the bank of substantially that quantity and quality. Plaintiff contends that by the terms of the guaranty defendant guaranteed (in respect of any loans plaintiff had made, or might thereafter make, secured by warehouse receipts for Cuban mahogany lumber, or logs) that the net proceeds of the collateral would pay the loan.
On the trial the plaintiff tendered testimony with reference to the whole course of dealings between the Export Storage Company, the lumber company and the plaintiff bank, to connect the defendant Laidlaw personally, with all the steps and all the transactions in order, as claimed, to show all the surrounding circumstances attending the transaction of January 5, 1905, for the purpose of aiding the court in the construction of the contract sued upon. Substantially the testimony offered tended to show, that Mr. Laidlaw, defendant, who was president of the Mahogany Company and Mr. Kellogg, president of the plaintiff bank, and who was also vice-president of the Storage Company had conducted the neeotiations with reference to the loans referred to in the note, and in the guaranty, and that during the time that the loans were *99 in existence repeated conversations were had between them respecting all the matters connected with the lumber and the loans of the bank upon it; that at times the bank was apprehensive about the security, and that much correspondence was had with Mr. Laidlaw which was tendered in evidence; that on May 27, 1904, the president of the plaintiff bank requested by letter, to Mr. Laidlaw, that an inspection be made of the lumber by a reliable inspector, “in order that both you and ourselves should know something about what we have there”; that defendant Laidlaw replied on the following day, May 28, 1904, stating: “I see no reason why we should not find out exactly what we have in these piles of lumber which are security for the loans at your bank.” In the same letter he states that he does not know what the inspection will cost, but would find out and suggests that he would make an effort to sell some of the lumber to some purchasers under the arrangement between the parties and states: “They have really not had time to answer. Then if the Keith Lumber Company concludes to take ten or twenty cars of this lumber, as they have been talking of doing, and they come here about the first of the month as they promised, then it would not be necessary to go to the trouble of tearing down these piles and building them again when it could all be done if the lumber was sold.” The testimony tendered was rejected by the trial court, to which the plaintiff excepted.
A guarantor, like a surety, is bound only by the words of his contract. Other words cannot be *100 added by construction or implication, but the meaning of the words actually used, is to be ascertained in the same manner as the meaning of similar words used in other contracts. The language used, is to be understood in its plain, ordinary sense, as read in the light of surrounding circumstances, the situation of the parties, and the object of the guaranty, and that construction given which most nearly conforms to the intention of the parties* Parol evidence is not admissible to enlarge or to limit the terms of the instrument. But evidence of the surrounding circumstances is competent, in order to arrive at the intention of the parties, as declared by the words employed, and as in 'construing all contracts, the words employed by the parties will be construed in the light of these circumstances. Morgan v. Boyer, 39 Ohio St., 324; Cambria Iron Co. v. Keynes, 56 Ohio St., 501; Merchants Natl. Bank v. Cole, 83 Ohio St., 50; 20 Cyc., 1439. In Morrell v. Cowan, 7 Ch. Div. (L. R.), 151, which involved the construction of a guaranty, it is said: “in determining the construction of this instrument the court is entitled to look at the surrounding circumstances; that is to say, it is entitled to consider, first, who the parties were; secondly, in what position they were; and, thirdly, what the subject-matter of the agreement was.” The trial court refused to permit this testimony on the ground that under the issues made by the pleadings, the knowledge of Laidlaw, or his good faith, were not put in issue, and that in the absence of such an issue made by the pleadings, such testimony was not competent. This view was *101 adopted by the learned circuit court. It is true that there was no such issue in-the case, but the testimony was not offered with reference to any such issue, or for the purpose of showing- bad faith, or fraud on the part of the defendant, but for the purpose of putting the court in possession of the circumstances under which the transaction occurred, so as to better enable it to arrive at the intention of the parties in the making and accepting of the guaranty, and better to construe the language employed in it. It will be noted, that the guaranty itself does not stipulate, that the warehouse receipts calling for Cuban mahogany lumber should be issued by any particular company or for any particular quantity, or quality of such lumber, and it is to be particularly noted that the guaranty does not stipulate, that the bank and the Mahogany Company shall maintain any particular proportion, between the lumber and the amount of the loans, which might be made by the bank to the lumber company. So far as the guaranty itself goes, its language is broad and full.
It is in respect of any loans heretofore, or hereafter made, for which warehouse receipts calling for mahogany lumber are taken as collateral security; that the net proceeds after expenses shdll not be less than the amount of money loaned by the bank, with interest, and agrees to make- good to the bank any loss, should the net proceeds be less than the claim of the bank. The last clause which provides, “This guaranty applies to a loan represented by a note dated January 5, 1905, amounting to $26,245.86 and the renewal of same or any part *102 thereof,” is claimed by the defendant to limit the guaranty to that note, and it is urged that the doctrine expressio unius est exclusio alterius, applies. That maxim is not of universal application, but is to be invoked as an aid in arriving at intention and not to defeat the intention of parties. The paper itself is dated January 3. The date of the note as given in this clause is January 5. The actual date of the note is January 4. It is conceded both the note and guaranty, were delivered at the same time. The evidence tendered showed that the guaranty had been prepared before that day, in anticipation of the arrangement, and the reasonable inference is that, that clause was added so as to specifically include the note which was expected to be, given soon in the future. We are forced to this conclusion by a consideration of the other terms of the guaranty, and by the terms of the note itself which recite: “having pledged as collateral security for the payment of this note and of every other liability of the undersigned to said bank * * * due, or which may hereafter be incurred the following property * * * Export Storage Company receipts * * * calling for 377,520 feet Cuban mahogany lumber.” This precludes the view that it was the intention of the parties that the 377,520 feet of lumber must be had and kept as security for this particular note. That is, defendant did not stipulate that that particular quantity of lumber should stand between him and liability on his contract.
We think it clear, from a careful consideration of these terms and conditions of the guaranty *103 itself, and of the particular note referred to therein, that the evidence tendered should have been admitted for the purposes above stated. The position of the defendant as president of the lumber company, the position of. the president of the bank in the storage company, and the manner in which the entire transaction was conducted, as disclosed by that testimony, places the defendant in a different relation to this guaranty than that of a mere stranger. As was said in Iron Co. v. Keynes, 56 Ohio St., 514, in which some of the directors of the company signed the guaranty on behalf of their company: “They were not only pecuniarily interested in the successful operation of its business, but were charged with the general superintendence of its affairs. To give it power to buy, was to promote prospective personal gain to themselves.” In Luckenbach v. McDonald, 164 Fed. Rep., 296, defendants were respectively president and secretary of a corporation and endorsers of a note given by the company. The note not having been protested and not having been presented for payment to them, they claimed to be released for want of notice of dishonor, under the negotiable instruments’ law. Evidence was admitted showing their relationship to the company and to the note, and that it was in fact for their accommodation, and the court say: “If there was no other evidence in the case except the note itself, with these defendants appearing as they do upon the back of the note as endorsers, of course this section would apply, and they could not be held in any other capacity. It would then have been necessary for the plaintiff to prove presentment and notice.”
*104 It is seriously contended by defendant, that he had a right to suppose from his contract that he had an ample security of 377,520 feet of lumber, between him and his ultimate liability, on the ground that the guaranty, practically incorporated all the terms of the note, in its own terms, and provided that substantially that amount of lumber should be held to secure the note. As above pointed out, no such definite intention can be found in the language used, because the note itself provided that the 377,520 feet of lumber had been pledged as collateral security for that note, and of every other liability which had been then, or might thereafter, be incurred. The learned circuit court took the view of the defendant’s counsel, and in its opinion cites the case of Farmers’ & Merchants’ Natl. Bank v. Lang, 87 N. Y., 209, in support of its conclusion. In that case the guarantor guaranteed to the bank “all pledges of property, warehouse receipts and other vouchers” given by the principal debtor, and further “that the property so transferred and set over to said bank shall not be ‘misapplied. or diverted’ to any other purpose.” The guarantor was in no way connected with the principal debtor. He was purely an outside party. The writing did not absolutely guarantee the payment of the money which was loaned by the bank, but on its face stated that the guaranty was that the property transferred and set over would not be “misapplied or diverted” to any other purpose while such loans remained unpaid, and if any “default or misappropriation of the property so pledged shall be made,” the guarantor was to make *105 good any deficiency. In that case the defendant showed by evidence, that the cashier of plaintiff had consented with the principal debtor that he should not set aside or have on hand all of the property described in the receipts, and that the bank had waived its right by an arrangement with the principal debtor. In this case the note provided that the lumber was held for this debt, and any other debt, and the evidence tendered shows that the bank had requested the guarantor himself to join in an inspection of the property called for by the receipts, “in order that you and ourselves should know something about what we have there.” And the defendant Laidlaw had recognized his duty as president of the lumber company to assist in seeing that the lumber was present as “called” for, and had suggested methods of obtaining the information.
For these 'reasons we conclude that the trial court erred in instructing the verdict for the defendant, and the judgments of the courts below will be reversed.

Jtidgments reversed and cause remanded.

Davis, C. J., Shauck, Donahue, and O’Hara, JJ., concur.